Thomas A. Kearney (State Bar No. 90045)
Prescott W. Littlefield (State Bar No. 259049)
**KEARNEY LITTLEFIELD LLP**
633 W. Fifth Street, 28th Floor
Los Angeles, CA 90071
Telephone:  (213) 473-1900;
Facsimile:   (213) 473-1919
E-mail:       tak@kearneylittlefield.com
                   pwl@kearneylittlefield.com

Gene J. Stonebarger, State Bar No. 209461
gstonebarger@stonebargerlaw.com
Richard D. Lambert, State Bar No. 251148
rlambert@stonebargerlaw.com
Elaine W. Yan, State Bar No. 277961
eyan@stonebargerlaw.com
**STONEBARGER LAW**
A Professional Corporation
75 Iron Point Circle, Suite 145
Folsom, CA 95630
Telephone (916) 235-7140
Facsimile (916) 235-7141

*Attorneys for Plaintiff Jennielyn Alcarion and the Class*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIELYN ALCARION, an individual, on behalf of herself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>CHARLOTTE RUSSE, INC., a California corporation; CHARLOTTE RUSSE MERCHANDISING, INC., a California corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.  13-cv-01176-DMS-NLS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>1. **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Jennielyn Alcarion ("Plaintiff"), on behalf of herself and the Class of all other similarly situated persons defined below, demands a trial by jury and hereby complains and alleges upon information and belief as follows:

## NATURE OF THE ACTION

1. This action is brought on behalf of all consumers who have received unsolicited and un-consented to text messages on their cellular telephones from Charlotte Russe, Inc. and Charlotte Russe Merchandising, Inc. ("Defendants"), in violation of the Federal Telephone Consumer Protection Act.

## JURISDICTION AND VENUE

2. The Superior Court of the State of California has jurisdiction over this action pursuant to Article VI, section 10 of the California Constitution, because this case is not a cause given by statute to other trial courts.

3. This Court has personal jurisdiction over Defendants because Defendants are headquartered in San Diego, California. Further, Defendants are registered with the California Secretary of State to do business in California, and did sufficient business in, has sufficient contacts with, and intentionally availed themselves of the laws and markets of California through the promotion, sale, marketing, distribution and operation of its products and services, as to render exercise of jurisdiction by this Court permissible.

4. Venue is proper in San Diego because Plaintiff resides in the County of San Diego, California, and Defendants are headquartered in San Diego, California and are currently doing and have done during the relevant time period significant amounts of business in San Diego. In addition, many of the acts and practices giving rise to Plaintiff's claims occurred in this County.

## PARTIES TO THE ACTION

5. Plaintiff Jennielyn Alcarion is a real person residing in the County of San Diego, State of California, and received multiple unsolicited and un-consented to text messages from Defendants.

6. On information and belief, Defendants are California corporations that provide retail clothing and accessories to customers.

7. Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 100, inclusive, and therefore, sue such Defendants by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Doe Defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiff and the Class. Each reference in this complaint to "Defendants," "Defendant," or a specifically named defendant refers also to all Defendants sued under fictitious names.

8. Plaintiff is informed, believes, and thereon alleges that all Defendants were at all relevant times acting as actual agents, conspirators, aiders and abettors who provided substantial assistance with knowledge of the wrongful conduct, ostensible agents, partners and/or joint venturers and employees of all other Defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy and/or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their Co-Defendants; however, this allegation is pleaded as an "alternative" theory wherever not doing so would result in a contradiction with other allegations.

9. As an alternative theory, Plaintiff is informed and believes, and on that basis alleges, that Defendants are alter egos of each other. Plaintiff is informed, believes, and on that basis alleges, that there is common control over Defendants, and they operate pursuant to a common business plan. There is unity of interest among Defendants. The alternative alter-ego relationship among the

1  Defendants should be recognized to prevent an injustice.  If the alter-ego
2  relationship among Defendants is not recognized, an inequity will result because
3  an entity responsible for wrongdoing will be shielded from liability.  Moreover, the
4  Co-Defendant entities that make, in whole or in part, the decisions concerning the
5  wrongdoing alleged herein would escape liability, which is inequitable.
6  Furthermore, the alter-ego relationship should be recognized to ensure effective
7  injunctive and declaratory relief, so that the wrongful practices alleged herein are
8  not relocated to an affiliated company.

## GENERAL ALLEGATIONS

10.  Visual messages have been transmitted through telephone connections for about as long as telephones have existed.

11.  In about the 1870s, stock exchange data was transmitted over special telegraph lines which utilized stock tickers to print the data out as visual text messages.

12.  By about the 1920s, telephone connections were used to transmit and receive visual text messages via teletypewriters (TTYs).

13.  In about the 1960s, technology took a step forward with the emergence of telecommunication devices for the deaf (TDDs), allowing telephone users to use ordinary telephones to converse via visual text messages through a telephone connection.

14.  By the 1980s, a new technology emerged which permitted visual text messages to be transmitted to and received by telephonic devices through short message service (SMS) technology.

15.  SMS technology became widespread in the United States in the past decade together with the growth of telephonic services which permit SMS messages to be exchanged in a conversational manner.

/ / /
/ / /

16. In the past decade, a newer technology also emerged that, once a telephone connection is made, permits the transmission of multimedia messages which can play directly on phones via a multimedia message service (MMS).

17. MMS messages can include SMS-like text messages as well as audio and visual messages of different types, including without limitation moving, pictorial images (e.g., slideshows, movies, et cetera) and long, scrolling text messages.

18. MMS technology has become widespread in the United States in the past few years.

19. Today, billions of consumers worldwide have telephonic devices which permit them to receive SMS and/or MMS messages, permitting consumers throughout California and the rest of the United States to engage in telephone conversations utilizing such messages.

20. For many consumers (e.g., hearing impaired persons), SMS and/or MMS messages are the only way that they converse on the telephone. However, marketing (a/k/a commercial solicitation) through message service messages is inherently injurious to consumers who have telephonic devices with SMS and/or MMS message capabilities (e.g., cellular telephones and pagers). In fact, such marketing has injured consumers. For example, as a consequence of marketing via message service messages:

    a. Consumers incur increased monetary costs for their message services;

    b. Consumers lose storage capacity on their telephones and related devices;

    c. The limited storage capacity of telephonic devices can be exhausted by unwanted message service messages resulting in the inability of consumers to receive necessary and/or expected communications;

    d. Consumers are deprived of the opportunity to immediately question a seller of goods and services about the veracity of the seller's claims;

    e. The privacy of consumers is invaded;

    f. The telephone networks upon which consumers rely are used inefficiently and harmed to the detriment of consumers;

    g. Consumers are annoyed and harassed;

    h. Consumers and their property are susceptible to injury and/or are injured in other ways in accord with proof to be presented at trial.

21. On or about March 27, 2012, Defendants sent Plaintiff an unsolicited and un-consented to text message advertisement soliciting Plaintiff's patronage. The text message specifically identified the sender as "Charlotte Russe."

22. Upon information and belief, Defendants send numerous such unsolicited and un-consented to text messages to many persons.

23. Due to the generic nature of the text message and the fact that Plaintiff regularly received similar text messages from Charlotte Russe, Plaintiff believes that the message was sent from an automated dialing machine.

## CLASS ALLEGATIONS

24. Plaintiff brings this action on her own behalf and on behalf of all other persons similarly situated, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure.

25. Representative Plaintiff brings this class action on behalf of herself and as a representative of the following class of persons entitled to remedies under law including, but not limited to, damages:

> All persons in the United States of America who were sent, to their cellular or pager numbers, unsolicited and un-consented to SMS or MMS messages which marketed Charlotte Russe products or discounts.

Excluded from the Class are all managers and directors of Defendants and members of their immediate families, the Court, and legal counsel for either side, and all members of their immediate families.

26. This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation:

    a. *Numerosity:* The Class is so numerous that joinder of all members is impractical. Because Defendants operate large, national retail stores, there are likely numerous members of the Class.

    b. *Ascertainability:* The identities of the Class members are ascertainable from Defendants' records.

    c. **Common Questions Predominate:** There are questions of law and fact common to the Class, which questions predominate over any questions affecting only individual members. The principal issues include, *inter alia*:

        i. Whether Defendants negligently caused violations of the Telephone Consumer Protection Act, 47 U.S.C. section 227, when sending unsolicited and un-consented to SMS or MMS messages to Plaintiff and the Class;

        ii. Whether Defendants willfully caused violations of the Telephone Consumer Protection Act, 47 U.S.C. section 227, when sending unsolicited and un-consented to SMS or MMS messages to Plaintiff and the Class;

        iii. Whether Defendants used an automatic telephone dialing system to send unsolicited and un-consented to SMS or MMS messages to Plaintiff and the Class;

        iv. Whether Plaintiff and the Class are entitled to damages for Defendants' actions;

///

      v. Whether Defendants should be enjoined from engaging in such conduct in the future.

  d. *Typicality:* Based on the conduct described above, Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have similar claims and remedies arising out of Defendant's common course of conduct complained of herein.

  e. *Adequacy:* Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff is committed to vigorously litigating this matter, and has retained counsel experienced in handling class claims. Neither Plaintiff nor Plaintiff's counsel have any irreconcilable conflicting interests that might cause them not to vigorously pursue this claim.

  f. *Superiority:* A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply with federal law. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims. A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, since individual member's claims for damages are relatively modest, the expenses and burdens of litigating individual actions would make it difficult or impossible for individual members of the Class to

redress the wrongs done to them. An important public interest will be served by addressing the matter as a class action, substantial economies to the litigants and to the judicial system will be realized, and the potential for inconsistent or contradictory adjudications will be avoided.

## FIRST CAUSE OF ACTION

### Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227

27.   Plaintiff reasserts and re-alleges the allegations set forth in the above paragraphs as if the same were alleged herein this count.

28.   At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the Telephone Consumer Protection Act, 47 U.S.C. § 227.

29.   Negligently, recklessly, willfully, and/or intentionally, Defendants directly and/or vicariously engaged in acts, omissions, and/or other conduct as referenced herein this complaint that violates the Telephone Consumer Protection Act. Defendants directly and/or vicariously used automatic telephone dialing systems to initiate unsolicited and un-consented to telephone calls to Plaintiff's cellular telephone and/or pager numbers.

30.   Plaintiff is entitled to recover $500 in damages from the Defendants for each violation of the Telephone Consumer Protection Act.

31.   Additionally, Plaintiff is entitled to all damages referenced herein and in accord with proof, attorneys' fees, costs, treble damages, and other remedies allowed by the Telephone Consumer Protection Act.

## PRAYER FOR RELIEF

WHEREFORE, on behalf of herself and all others similarly situated, Plaintiff demands judgment against Defendants and prays that this Court do the following:

/ / /

1  A. Order Defendants to make Plaintiff and the Class whole with an award of damages in accord with the allegations of this complaint and proof to be presented at trial.

B. Order Defendants to make Plaintiff and the Class whole by providing appropriate prejudgment interest, in an amount to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful practices.

C. Order Defendants to pay Plaintiff and the Class punitive and/or treble damages to the fullest extent allowed by law.

D. Award Plaintiff and the other class members the costs of this action, including attorneys' fees,

E. In accord with proof at trial, grant any additional or further relief as provided by law or equity that the Court finds appropriate, equitable, or just.

Dated: July 1, 2013                                 **KEARNEY LITTLEFIELD, LLP**
                                                    **STONEBARGER LAW, APC**


                                                    By:*/s/ Richard D. Lambert*
                                                        Richard D. Lambert
                                                        Attorneys for Plaintiff

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

Dated: July 1, 2013                                 **KEARNEY LITTLEFIELD, LLP**
                                                    **STONEBARGER LAW, APC**


                                                    By:*/s/ Richard D. Lambert*
                                                        Richard D. Lambert
                                                        Attorneys for Plaintiff